Our first case, our only case actually, before we come to the panel, I wanted to take a moment to thank the Honorable Douglas O'Neill of our own district, right here in the Eastern District, for sitting with us today and appreciate your joining us and your talents. We look forward to a brief time we'll have with you, but we look forward to the nevertheless. I don't think I've ever sat with you before, have I? I don't think I have. First time. I've sat with you before. I guess we didn't have any memorable cases. Okay, we can proceed. May not have any today. Go ahead, please. Good morning, Your Honors. Peter Louisi from the law firm of Latorre-Louisi on behalf of General Starr Indemnity Company and Summit Risk Management Company. This is an appeal of a grant of summary judgment by the U.S. District Court in Camden in front of Judge Rene Bum. It was cross motions by both parties. General Starr and Summit Risk obviously lost. There were several reasons put forth for summary judgment, and I think both briefs actually list them quite in detail, so I'm not going to really go into all of the arguments in detail, but I'd like to just make a few points. Overall, and this was our theme below, and it's our theme here today, when you pay an insurance company premiums and you submit a claim to them, and here a claim was submitted on 8-16-99 to Princeton Insurance Company, they can't wait four years and do absolutely nothing, and then all of a sudden on the eve of trial come back and say, oh, by the way, there's no coverage. You say absolutely nothing. They did not do absolutely nothing. They did do something. Communication with you could have gone better. Let's review what they did, Judge. They acknowledged the claim 8-16-99. Pat Barron, who was the insurance adjuster, who was also an attorney, admitted she did absolutely nothing from 8-16-99 until 7-21-01, which is approximately two years when the complaint was forwarded to her. Well, one of the issues was would anyone covered by the policy be named in the complaint? That's correct. And was anyone covered by the policy named in the complaint? Judge, what it really comes down to is... Was anyone covered by the policy named in the complaint? The health department's covered by the policy. It was named in the complaint? The health department was implicated in the complaint. Was it named in the complaint? Not specifically. Okay. That was my question. You know, if you just say no, then we can move on to the next point. No, Judge. Who was named? How were the nurses described in the complaint? The nurses were described in the complaint as the nurses in the jail. The nurses in the jail are, admittedly, Princeton insured. They weren't specifically identified. I know that. Did it say the nurses were health department employees? No, because the plaintiffs didn't know that. But it was learned that they were health department employees. But does the county have any nurses that are not health department employees? They don't have any RNs or LPNs who are not employees of the health department. And, in fact... We're having the same problem that we had before. Right. I used the term nurses. You answered with LPs and RNs. Well, there were two. All right. Maybe I should explain that. Are there any nurses that are not employees of the health department? There were licensed practical nurses who can prescribe medication. And by whom? They were independent employees. Who employed them? They were through an independent contractor. I think it was EMS. They were also a party defendant. That party also provided doctors. So the nurses, the everyday nurses who dispensed medication and did the day-to-day things in the jail were employees of, I say, the county and the health department, which are the same parties. And then the licensed practical nurses and the doctors came in on an as-needed basis and could prescribe medication and do evaluations and examinations. That's the difference between them. The nurses that are referred to in the complaint are the ones that would dispense the medication, are the employees of the county and the health department. One of the issues below, obviously, was whether or not the county and the health department are separate legal entities. And they're not. The only proof that was relied on below about this dealt with a declaration sheet that was issued by Princeton Insurance, which I argue on its face was ambiguous. What it said was the county of Gloucester Health Department, care of the county. To me, that means the county and the health department are the same thing. At a minimum, it raises a question as to whether or not they're the same entity. Is there any evidence as to what the premium was for the health department and what it would have been if all the county employees were covered? I don't judge, but that's not our argument. I'm not saying that all the county employees are covered. What I'm saying is this. The nurses were employees of not only the health department. Some of Princeton's insurers were employees or were in other departments via the health department or did other things other than being working in a jail. What I'm saying the policy provides is coverage for any medical alleged malpractice or failure to provide treatment for the health department nurses. And that would go beyond the jail. I'm not saying that it insures every department. What I'm saying is it insures every nurse doing anything for the county who is named in that policy. It also insures the health department. My understanding of the complaint is that the guards failed to pass on the information that the plaintiff needed medication. Well, that's an issue that was actually never resolved. That was the allegation in the underlying matter. That was the nurse's defense. The sheriff's department had the opposite position. They said they take down and they do an intake. They took a form and they put it in a bin where the nurses were supposed to pick it up. The nurses claimed they never saw that form. And that form, was that entered into the record? I'm not sure, Your Honor. It wasn't entered into the record in this case. I believe it was entered in the underlying matter. The sheriff's department is a separate legal entity, is that right? Excuse me? The sheriff's department is a separate legal entity from the county? No, I believe it's part of the county also. The insurance policy, when the sheriff's department, actually the sheriff's department wasn't sued. Who was sued was the jail. And the jail is a county entity. The sheriff's department provides the corrections officers. When you say the jail was sued, how was the complaint captioned? The complaint was captioned, McCorporations. It would be Exhibit A71. And it was captioned, county of Gloucester. I'll just list the defendants. County of Gloucester, sheriff's department, and John Does as agents, servants, and employees of the county of Gloucester. Now, there's some notation that Princeton, and I'm partly, it's clear in the brief, and I was reading my notes this morning, reading my writing, but I remember reading in the brief there was an issue about the file of Princeton being closed because there was, I guess this is Bloomberg's notation. There was no one to sue, but there was an issue about whether or not one of the John Does would turn out to be an insured. Does that reference make sense to you? I don't remember any reference to the fact that maybe one of the John Does would be, from Bloomberg, that one of the John Does would turn out to be insured. What Mr. Bloomberg said at his deposition was that he was forwarded the file. He sent no acknowledgment letter to Princeton. He looked at the complaint. He claims that he made a phone call to somebody from the county, although he doesn't remember who or what they really said. And left no message. And left, well, he said he spoke to somebody. He doesn't remember who. At the health department. And went through with them the fact that he didn't see anybody named in the caption as opposed to the body of the complaint. And then he, with that information, he contacted the adjuster at the time and said, I don't see anybody to answer for. They said fine. And that was the end of it. That was the total extent of Mr. Bloomberg's involvement. And when was that? That was in August of 2001. And the complaint was filed when? The complaint was filed in, well, it was received by Princeton July 21st of 2001. It was filed May 2nd of 2001. And the denial of claim was received? The denial of claim wasn't received until 11-11-03. And it was written by counsel on eve of trial. Is there actual prejudice? I know there's a presumption of prejudice. But if we get to the point on the delay claim, is there actual prejudice here? Are you relying upon the presumption of prejudice? Well, there was prejudice at the time. But by virtue of General Starr's settlement of the case, there is no prejudice today other than to General Starr. At the time, the county was forced to contribute $100,000 towards the settlement of this case. While it's true that General Starr did pay the defense costs throughout the entire case, there was a reservation of rights. And in the end, Princeton was asked to join in, and Princeton declined to do that. Based on that, in the underlying settlement, General Starr put up $50,000, and the county put up $100,000 of its own money. That resulted then in the county suing both insurance companies. And General Starr was the county's insurer? General Starr was the county insurer for the sheriff's department and for police activities. That was, they had a police by the law. And they had coverage more than the amount they put up, correct? Correct. Both insurance policies had coverage for more than that amount. I don't know exactly what it was, but it was more than enough to cover the settlement. I guess you're arguing that in terms of the delay, that had you known in a timely fashion that your defense was not proceeding in the manner that you assumed it was because of this policy, there's an issue here about whether or not the nurses were even informed. And had they not been informed, would there have been liability on the part of the county, or would there have been? Well, the allegations below go both ways. The plaintiff's complaint specifically says in more than one paragraph that he asked the nurses for his medication. He needed Coumadin. He had some kind of a heart problem, a heart condition. I believe he was in jail for not paying child support. He was in there for approximately three or four days. During that time, he claims he didn't get his Coumadin at all. He claims repeatedly in the complaint that he asked both nurses and sheriff's officers for his medication and that they ignored him. The nurses that he would have asked are clearly insurers of Princeton. And when you're looking at a complaint to decide whether or not you have to file an answer, you have to take into consideration whether the potential facts that are alleged in the complaint could implicate one of your insurers. Here, because Princeton did absolutely no investigation at all, did not speak to any of their insurers, Pat Barron, the adjuster, admitted she never once contacted the insurer. The only contact ever made, if it was made, and I question whether it was or not, was by Mr. Bloomberg. Had they contacted Diane McPheeters, who was the head nurse in the jail and an employee of both the county and the health department, who, by the way, says she's a county employee, they would have found that the allegations that I'm telling you directly implicated their insurers. In fact, because General Starr believed that it also had the county as an insured, they were actually defending the allegations of medical negligence on behalf of, that Princeton should have been defending. In fact, along those, I'm sorry, go ahead. How do you file an answer on, I'm sorry, I interrupted. No, that's okay. How do you file an answer on behalf of an insurer who's not named in the complaint? Well, what I'm saying, Judge, is they had to do some kind of investigation. If you make a claim to an insurance company, they just can't stick their head in the sands and do nothing. Well, let me ask you this. Suppose they investigated and they found out that these nurses were insured under their policy, but they still weren't named in the complaint as defendants. So what does the, how does its duty to defend arise if they aren't named as defendants? Okay, well, I'll break that into two parts. First, our argument is that the Health Department and the county are one and the same. So for that reason alone, Princeton had an insured in the case. That's our position. Second, with regard to whether or not any of their insurers were named, Princeton has made representations during this litigation that they offer free legal counsel to their insurers if they're deposed in a case. In this case, Diane McPhee is one of their names, insured, was deposed, although they never knew that because they never called anybody to find out what was going on. So whether they would have had to enter a full appearance or not, the fact is one of their insurers was deposed. One of their insurers was being implicated in malpractice for her overseeing of what was going on in jail, and they did nothing and knew nothing because they called nobody. This all comes down to whether or not an insurance company, at least at a bare minimum, has an obligation to contact their insurer when a claim is made. And I don't see how you can pay premiums to an insurance company. You can make a claim. You can provide them with a complaint. They send you out a letter that says, we will defend you and protect your interests. Here's your attorney. Never rescind that letter. And then two years later on even trial, which makes it four years in total from the day the claim was first made, all of a sudden say, oh, by the way, we had no coverage. How should we look at the application for insurance, which does say county, not health department? If you listen to Dan Dalton, who was the insurance agent who drafted that, he testified that county government meant that the health department was insured, but he was saying that the health department was part of county government. To him, it was all one and the same. And interestingly, one of the issues raised in Princeton's brief, they talk about a 2004 attempt by Lori Peterson, who works for Mr. Dalton, in 2004 attempting to have the policy retroactively specifically named the county. And the reason that happened is because of this case. They found out that Princeton was declining coverage to the county, whereas Dalton, who placed the coverage, and Lori Peterson, who then succeeded him on the account, were always of the view that the insured was the county of Gloucester and the health department. Was the insured the sheriff's department, too? Well, on General Starr's policy, it was. Well, but I mean, if you're saying the health department and the county are one and the same, aren't the sheriffs? That's my opinion, and the answer is yes. I agree, they are. So that Princeton ought to cover the sheriff's department? No, no. No, that's not what I'm saying. I'm saying they ought to cover their nurses and the county to the extent that the county is being accused of failing to provide medical care. Because the county and the health department are one and the same? Correct. But then aren't the county and the sheriff's office one and the same? Well, they are. However, General Starr's – I think your differentiation seems to go in your favor and not the other way. Well, General Starr's policy specifically includes any claims for failure to provide medical care. That's why there's a separate policy. That's why Princeton's policy is in play. There were allegations that they encompassed both policies. So, yes, they are one and the same. However, they cover different risks, and both the risks were in the underlying case. But arguably, if the sheriff does not relay a complaint to the nurse and the institution, well, that's not providing medical care. I do see a distinction there. That's really the issue here, Judge. The two policies cover the county for different risks. You're saying that the county was not notified until the eve of trial. Had the county in any way been prevented from preparing for trial by lack of counsel? No, they weren't. But this is the reality of it, Judge. When you make a claim to an insurance company and somebody's defending you, almost every insurer doesn't really look any further. Nobody really, until the end, when settlement talks were in the – I used to actually defend medical malpractice cases for insurance companies, and I was always very much aware of who was covered by whom and who was doing what and what needed to be done. So the picture you're painting is not what my personal experience would indicate. Well, Judge – Although, should that be a factor? I don't know. Well, Judge, if a county is being defended the entire way and not putting any money out of their pocket as far as they're concerned, that's all that was important. When the issue came up near the end when they were trying to settle it, when they realized Princeton never became involved, and the way that happened is the insurance adjuster for Summit Risk, who was the third-party administrator for General Starr who was handling the claim, somewhere along the line realized that Princeton had a policy and should have been involved. Now, I believe he was the second adjuster on the case. Maybe – I don't know why it didn't come up until later on. But at that point, they then pressed the reservation of rights, which they had issued in the beginning, and that's when the county realized that, hey, maybe Princeton should be in here. And at that point, the county did write a letter, or it was contact, I believe, from county counsel with Princeton, as well as between Summit Risk and Princeton about them becoming involved. And the end result was the 2003 letter in November where they said, oh, sorry, there's no coverage here. Is there any law that says that an insurance company has a duty, when their insured is not named, to investigate to see if – not name in the caption, to look at the contents of the complaint to investigate – you're saying that put them on notice that one of their insureds was involved in the case. Yes. Is there any law squarely in point, or are you asking us to make a new law? There is case law in New Jersey. In fact, that is the law in New Jersey, that whether or not an insurance company has a duty to defend is that they have to compare the facts alleged in the complaint. And interestingly, it doesn't talk about the caption, and decide whether any of the allegations in the complaint fall within any of the coverage in their policy. I don't believe we've briefed the duty to defend, but that is the law in New Jersey with regard to duty to defend. And that's my – one of my arguments. There were specifically allegations laid out in the complaint that would have implicated the insureds of Princeton. And that's one part. And like I said, this is a two-part argument. The second part is, and they're independent of each other, is that I'm saying that at least for the purposes of medical – providing medical care that the county and the health department are the same. And that's the risk, the specific risk that Princeton undertook. Well, you did cite Voorhees, and Voorhees talks about the duty to defend. Excuse me? You said you didn't brief the duty to defend, but I think you cited Voorhees. Did I judge? I might have. Voorhees talks about that. I might have judged. There's a lot of cases in my 60 pages. Okay, well, I don't know. Did you save time for a bundle? I did judge. Okay, so we'll hear from you again. Okay, thank you. There were a lot of cases in your 60 pages. Yes. Okay. Good morning, Your Honors. Good morning, Mr. Buscelli. My name is Scott Buscelli. I'm a shareholder with the law firm of Cooper, Buscelli & Morrison. I represent Princeton Insurance Company, the appellee defendant. I trust that the Court will not be surprised if I shed an entirely different light on the argument and perspectives and the facts as they came out in Mr. Louisi's case. First of all, at no time were any of the defendants in this case without legal counsel, represented by General Starr, who insured the county, the Sheriff's Department specifically, and they were the defendants in the case. But that doesn't – that might go to any damages for any failure, for any delay from any breach. But that doesn't go to whether or not it was the duty on the part of Princeton to defend, does it? Well, yes, Your Honor. And one of the things that were brought up about the allegations and the complaint, there was a kind of a mischaracterization of the law in New Jersey. What you do is you look at the people in the – the defendants in the caption. Then what you do is you look to the allegations and see if any of the allegations related to the defendant fit under the four corners of the complaint, looking at that, and then applying it to the insurance policy. You do not, as Mr. Louisi would argue, look at the allegations in the complaint, try to find out if you've got an insured that would fit those facts, and then try to bring your own insured into the case. You would actually be trying to make a case against the person that you're trying to keep out of the lawsuit, that you're trying to defend. Why would you try to search out and hunt out and then go to the plaintiff's counsel and say, you know, you didn't name my insured. You really should name my insured and bring him into the case because Gen Starr Insurance wants to lay off some of their liability on someone else. But it's clear under the complaint that the ultimate payout, if the plaintiff succeeded, was going to come out of the coffers of the county, though. Isn't that fairly clear? Eventually it would come out of the insurance policy. It didn't – Which insurance policy? The Gen Starr's. Why not Princeton? I'll explain that, Your Honor. We had the initial allegations against an unnamed defendant, John and Jane Doe's. They just mentioned nurses in their beginning. They issued their reservation of rights letter based on that complaint. Nothing more. When it came time two years later, when there was no nurse defendant, no affidavit of merit, no amended complaint, no third-party complaint, no declaratory judgment, then they still used the same reservation of rights letter that says we don't cover medical incidents to extract money from the county, which is a violation of Roe v. Farm's Supreme Court case. I'm not sure how that goes to the issue here of your duty to defend. I read Voorhees very similar to the way Mr. Wiese phrased the duty to defend, in terms of not just looking at the caption on the complaint and forgetting about it. You have to – it doesn't – Voorhees talks about it doesn't matter if the claims are poorly developed. It doesn't matter whether or not the cause of action is assured or failed. You have to get some idea as to whether or not the insured has an interest in the case. That's not from the language, but that's basically what Voorhees seems to be saying. But to say this, Your Honor, the New Jersey law says that I do not have – that insurance companies do not have the duty to investigate beyond the four corners of the complaint to do the initial determination. Another thing is they were never denied coverage. That never occurred in this case. When you say beyond the four corners of the complaint, maybe we're saying the same thing. You do look at the complaint, not just the caption and – The entire complaint. The entire complaint. You don't get into the merits of the case. That's correct. But you don't try to get – what they would argue is I should have – or any defense attorney would have gone into this case, said, you know, they mentioned nurses. Could be any number of nurses. Any nurse or could have been independent contractors. You don't know that at the beginning. Go to the health department and say, I'm going to go tell a plaintiff that there's nurses mentioned in this. I'm going to answer on behalf of you guys even though you're not – the court would throw it out because I can't do that. I can't answer for somebody who's not named. One of the things that troubles me here is that the record establishes that when someone at Princeton – I can't remember her name. It's the same person that – Pat Barron. I guess that's her that Mr. Luizzi referred to counsel. They apparently made a reference in the file that this may turn out to be a bad client. Case may not be pursued. Now, that to me seems to be one suggestive of at least bad faith. And suggestive of the fact, well, you know, this case may just go away if we ignore it, which is totally inconsistent with 132 to defend. Well, what Your Honor is referring to is what her remarks were based on a tort claims notice in New Jersey. You said a tort claims notice. What's important about that tort claims notice is you don't see anything in there about the county department of health. Everything in there is about the sheriff's department and their negligence in that tort claims notice. And the county is in there too, though, isn't it? Right. And the thing is, as an insurance, you don't do anything with a tort claims notice. You file it. You open up a file and you just leave it there to see if it ever comes to fruition, because many times tort claims notices may not come actually to a lawsuit. So you put it in there. But that's all you know is what the plaintiff filled out a state-provided or county-provided form. And that's all it is. You get that in. You don't really know that much about it. There's no real factual scenario in there. So you make that kind of comment. But you wait for the complaint. Now, when a complaint comes in, they send a letter that says, we haven't been able to do anything, but pursuant to the terms of the contract of insurance, we're going to assign this attorney. And here's the attorney we sent it to. And it gives their name, his name, address, telephone number. His office is about two blocks from the county courthouse. He represents them all the time. And all you have to do, he checks the complaint, reads it, and says, I don't see ñ I got the policy. I don't see where the insured is on this thing. He calls up the county health department. I'm disparaging an attorney under oath. I'm not going to really get into that. But the attorney said, I called the county health department, and I specifically told them, if you need anything or something comes up, you give me a call. But for right now, I don't think you guys are in it. That's pretty good news for an insured. I don't need to defend you. You're not going to be involved in a civil lawsuit. I think an insured would like to hear that. And if they ran into trouble, I don't think they'd hesitate to call up. Now, this idea about Nurse McFetters, her opinion of who she works for, who she's employing, it doesn't matter. It's the contract of insurance. It's a county that asked a sophisticated broker to get an insurance policy. And on their application, Your Honor, it says, Department of Health, County of Gloucester. It doesn't say County of Gloucester. Back in paragraph 16, they list themselves as a political division of that. The plaintiff says, well, you know, we needed some further inquiry into this. Judge Baum laid out the lineage perfectly. Page 46, the County of Gloucester is a political subdivision of the State of New Jersey. The county itself has several departments and agencies, including the County Health Department. That's perfect political lineage. It makes sense to require a government entity like the county here to separately insure every single department. And if it leaves out one department, then the county itself is not insured for any liability incurred by that department, as opposed to simply insuring the county and thereby insuring the subdivisions of the county, such as the Department of Health. Does that make any sense? It surely does, Your Honor. I'll just give you a perfect example. Verbal threshold. As drivers of automobiles, we make a choice whether we want verbal threshold or nonverbal threshold. And we live with the consequence of that decision. And we do it all the time. People decide what and how much risk. Businesses do it all the time. How much risk do I want? What do I want to insure? Why do I want to insure? And in this case, they were very specific as to who and what they wanted to insure. They wanted to insure a medical incident. A medical incident. Now, that was another thing in Miss Louisi. Their argument is because the sheriff officers and the director of the freeholders testified under oath and said, this was a case about correction officers' negligence. What they're trying to say is because the correction officers failed to do their job, that created a medical incident which triggered the Princeton fallacy. Well, no, but if you look at how the term handles medical incidents, it talks about any act of omission in the furnishing of professional medical, surgical, dental, or nursing services or furnishing or dispensing drugs. Now, that's not the sheriff's obligation. How would I? How could I possibly not provide you with medication, be accused of not providing you with medication, when I didn't know I was even supposed to? You have to get there first. But now aren't you getting to the substance of the dispute? Were not the sheriff told the nurse that McCordell had been asking for medication? That's duty to indemnify. That's not duty to defend. Your Honor, I'll give you, and it's in my brief, they were actually going to call the nurses as witnesses to testify that they never got the notice. It's in my brief, and I quote it to the deputation. That's duty to indemnify. That's not duty to defend. Does that have anything to do with whether or not there's an obligation to come in and defend the purported insured? Under that logic, I would be defending the sheriff's department. Duty to defend. I mean, was there any lack of defense? No. Your Honor, as I said, they always had representation. They always had, I believe they had, it was 100 claim or 150 claim, and they had a million dollars on General Starr. They were never under any threat of anything. Are you saying because the other insurance company insured them, there was no failure on the part of Princeton to honor its policy? No, Your Honor. Judge Roth had asked me if there was essentially any prejudice to them by not having a defense, and I said no. Duty to defend. Duty to defend, and I said. Did they pay for the lawyer? Is there an adequate lawyer? Is the case adequately prepared for trial? And they did. And they did. They did. And not only that, but any time they could have or wanted assistance, their insurance broker, the County Department of Health, all knew that Princeton Insurance had a lawyer on standby that they could call at any given time to do that. Now, they talk about inaction. There was this inaction period. I'm from the old school. If there's nothing to do, you don't make do something. So they notified them. They put a lawyer on retainer. He was two blocks away from their department offices. There was nothing for them to do. When they tried the affidavit in front of the Superior Court in New Jersey, it said this is not an affidavit of merit. This is not a medical malpractice case. The complaint was never characterized. In New Jersey, they're required to put a code for medical negligence cases. That's never existed. No affidavit was ever found. The court itself said in its opinion, this is not a medical malpractice case. This is simply a personal injury case where he checked in, and the problem with it was if you were from one area, you checked somebody in so far, and if you were from another area, you checked them in farther. They never resolved that dispute. But one thing we know for a fact is no nurse ever committed negligence, ever. That was never an allegation. No expert reports, no nothing. All of that required and mandated to believe Mr. Luisi that based on a complaint, he takes the complaint and the allegations and then says, okay, two years later, none of this has been proven out, but you should have interjected yourself anyway. All that did is it proved Princeton's position to be correct. When it got two years later, there was nothing there. There was no substance to that, and he had to plead it that way, I'm sure, because of the liability. Now, the other thing is he keeps calling my letter a letter of denial. That's not a letter of denial. My letter clearly states, as I go through that November letter, when they contacted me. They contacted me after they'd gone to a settlement conference and said, we've been to a settlement conference. We want you to pay money. That's the conversation. I said, do I have any nurses? Has the judge said anything about liability? Has anybody accused the nurses? And the fact turned out that the nurses were actually going to be called to testify on behalf of the county as a positive reference, that they never got it. Because depending on, I thought, depending strategically, depending on who the department was that failed to do the check through, the county would be able to blame them and say they're not part of the county establishment. You were named in the complaint for that part of it. There's been no bad faith on behalf of Princeton. They came in, signed an attorney, they sent a letter, they notified people, and there's nothing for them to do. If we're going to say that insurance companies have to read complaints, and based on a suspicion. They do have to read complaints. I mean, that's what Roy Heath says. Read the complaint in the fashion, Your Honor, that you're not trying to inculpate one of your insureds. You're trying to avoid bringing your insureds in if you possibly can. That's the first order of business. The second order of business is, are you named in the complaint? Are any of the allegations provided for under the policy? You may have a medical liability policy, but if it's an auto accident it may not be implicated. So you have to look at that issue. I have no problem with that. But you can't just look at the allegations in a complaint and say we have no insured in the case, now what do I do? I implicate my insured because they may have a nurse. They may have nurses in there from independent contractors. They may have nurses at different facilities.  Well, again, it seems to me that we're conflating duty to defend and duty to indemnify. Reading from Voorhees, the court is saying, I don't think there's any dispute about this. There's little dispute that the complaint in this particular case of Voorhees was inartfully drafted. It does not clearly articulate facts necessary to prove a cause of action. However, the duty to defend is determined by whether a covered claim is made, not by how well it is made. The third party does not write the complaint to apprise the defendant's insurer of potential coverage. But the county was defended. The county was? Yeah. And if the county is saying, if GenStar is saying, we provided the defense, we paid for the defense, and Princeton should have paid for part of the defense, that would be a breach of the duty to defend. No, Your Honor, because they could take… If Princeton coverage was implicated. If it was later proven that the nurse, here's your nurse, she didn't come in. Yeah. Absolutely. But the duty to defend is it costs the expense of defending the case, the attorney's fees, the discovery costs, et cetera. True. And has there been any allegation of any inadequacy in the defense that was provided to the county? They did not. Well, are you saying that because there was defense on the part of another, and this is a question I asked you earlier, because there was defense on the part of the other insurance company that any duty to defend that Princeton may have had is somehow waived or mitigated, not in terms of dollar costs, but in terms of the fact, the legal obligation to defend, but because there was, in fact, defense by someone else. Is that it? If there's joint insurance and one company doesn't have the duty to defend because there's no defense in hand? No, Your Honor. If I may answer Your Honor's question, I'm out of time, but if I may answer Your Honor's question. I have never stated that because GenStar came in and did the defense that that somehow would escapade Princeton because… If I may, because I don't have to do that. GenStar had an absolute obligation under their policy of insurance to defend each one of those defendants for the negligence as alleged. They had no choice. That was their obligation. Sheriffs were accused of negligence. They had to defend them. Not once did they ever have to defend against the claim of medical negligence. Not once. Thank you. Thank you, Your Honor. Mr. Gleeser is resting time. So how was there a breach of the duty to defend? Because the duty to defend is a much lower standard than the duty to identify. Okay. But, I mean, what defense was not provided? Judge, just because GenStar provided a defense, and this goes back to what Judge McKeon just said. I mean, injury is part of how was the county injured by a breach of a duty to defend when they had a defense and when they were prepared to go to trial? Okay. They were not injured by a breach of the duty to defend on behalf of General Star. They were injured by a breach of the duty to defend on the part of Princeton. Okay. What should Princeton have provided? Princeton should have shared in the defense costs. Okay. But isn't that between GenStar and Princeton? It is now. It wasn't then. The only reason it's between us now is because the county has assigned me all of their rights. And interestingly, the county was the plaintiff in the underlying matter against Princeton and against General Star because the county believes that they're one and the same. This gets back to one other issue. So basically you're representing GenStar with the county's rights assigned to you. Correct. And also the health department's rights. So I stand in their shoes here today. And, in fact, in the underlying matter, there was a motion based on that assignment to substitute General Star as the plaintiff. And that did happen, and that was granted by Magistrate Rosen. So we're here today not only because General Star believes that they had a claim for reimbursement of legal fees, but also the county and the health department. One of the other issues, real briefly, I'll just touch on. In our brief, we also addressed the fact that there was clearly a question of fact as to whether the county and the health department were, at a minimum, separate entities. And the only evidence that Judge Baum relied upon was the two declaration sheets of the two insurance companies. And the problem I have with that is we don't know the custom and practice of either insurance company as to how they list insurance on their deck sheet. And I think, on its face, Princeton's policy with the healthcare of the county makes their deck sheet ambiguous on its face. The only evidence that actually was in front of the court, and I'm not saying it was enough that it was up to the judge to decide, was that they were separate entities. And that was testimony by Mr. Dalton, who was the insurance agent, by Laurie Peterson, and by Princeton's insurer, Diane McPheeters. They all said that the county and the health department were one and the same. So, at a minimum, if Your Honors today do not believe that Mike Riggs' argument passes muster, I believe that I did ask the judge at oral argument below for an additional opportunity to conduct discovery on a specific issue of county government and how it's made up. And that might solve the problem of whether or not the county and the health department are one and the same. I thought I heard you say a while ago, correct me if I'm wrong, that at the time of settlement, you asked Princeton to contribute to the settlement. That's correct, Your Honor. And so, what you're asking Princeton to do is assume a duty to indemnify. You didn't ask him for part of the cost of defending the case. Well, Judge, at that time, that's accurate. However, after the settlement, the county then sued Princeton, saying you had a duty to defend and to indemnify. And that's the claim that's presently pending. You're right that at that time, there really was no time left to defend because the case was going to be settled. When it was realized that they... Are you saying that, I'm not clear, that Princeton had a duty to have coverage and had a duty to contribute to the settlement? No. There's two different claims here, Judge, and they're both put in a complaint. The failure to indemnify is a separate issue from the duty to defend. The duty to defend is where our Briggs argument comes in. The failure to indemnify is our after-the-fact breach of contract argument with them that they should have also been there for that. They're separate claims in a complaint, separate issues. I'm not tying them together, but they were both pledged, and they were both dismissed. Briefly, Mr. Well, whenever any attorney says briefly, I start looking at my clock because that usually indicates that what's about to follow is not going to be that brief. Okay. And your time is up. Okay. If there's anything that you feel compelled to add, you can submit it in the 28-J letter, and your colleague across the way will have an opportunity to respond to that if he wants to. Thank you, Your Honors. Thank you very much for a very helpful argument. We'll recess the court briefly and recompose the forum.